Hon. Ronald B. Leighton

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington State Nonprofit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON DEPARTMENT OF ECOLOGY, a Washington State Agency; SANDI STEWART, in her official capacity as Director of Human Resources for the Washington Department of Ecology,<br><br>Defendants. | Civil Action No. 3:18-cv-05548-RBL<br><br>**PLAINTIFF'S OPPOSITION AND REPLY ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>**Noted on Motion Calendar October 25, 2019**<br><br>**Oral Argument Requested** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 2

    I.    Ecology's management of its lobby has displayed an intent to create a designated public forum ........................................................................................... 2

    II.   Ecology has interpreted its own speech restrictions as content-based ............... 6

P.'s Oppo. and Reply on Mtns. for Summ. J. - i
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

III. Freedom Foundation has presented both direct and circumstantial evidence demonstrating viewpoint discrimination ................................................................... 7

    a. Statements by Ecology's designated representative show viewpoint discrimination ............................................................................... 7

    b. The adoption and enforcement of Policy 14-10 demonstrate viewpoint discrimination ............................................................................... 9

    c. Policy 15-01 does not apply to outside organizations on its face, and Ecology's interpretation to the contrary is unreasonable ........................................... 11

IV. Ecology's interpretation and enforcement of Policy 14-10 are not reasonable ............... 13

V. Ecology has not left open adequate alternative channels ................................................ 14

CONCLUSION .................................................................................................................. 15

CERTIFICATE OF SERVICE ........................................................................................... 17

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998) ............................................ 3

*Board of Airport Commissioners of City of Los Angeles v. Jews for Jesus*,
    482 U.S. 569 (1987) ................................................................................................................ 14

*Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015) ............................................................................ 6

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) ................................................................................ 14

*City of Madison, Joint School District No. 8 v. Wisconsin Employment Relations Commission*, 429 U.S. 167 (1976) ................................................................................................ 8

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
    657 F.3d 936 (9th Cir. 2011) .................................................................................................. 14

*Contributor v. City of Brentwood, Tenn.*, 726 F.3d 861 (6th Cir. 2013) ...................................... 15

P.'s Oppo. and Reply on Mtns. for Summ. J. - ii
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

*Cornelius v. NAACP Legal Defense and Education Fund, Inc.*,
    473 U.S. 788 (1985)..................................................................................................8

*Families Achieving Independence and Respect (FAIR) v. Nebraska Dept. of Social
    Services*, 111 F.3d 1408 (8th Cir. 1997) .................................................................5

*Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001) ............................................8

*Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672 (1992) ........................13

*Janus v. AFSCME*, 138 S. Ct. 2448 (2018) .....................................................................9

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)....................................................................11, 12

*Lim v. City of Long Beach*, 217 F.3d 1050 (9th Cir. 2000) ............................................14

*Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133 (2d Cir. 2004) .................5, 14

*McCullen v. Coakley*, 573 U.S. 464 (2014) .....................................................................8

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983).............................................................................................4, 7–8

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).............................................................6

*Ridley v. Massachusetts Bay Transp. Authority*, 390 F.3d 65 (1st Cir. 2004).............7, 9

*Rosenberger v. Rector and Visitors of the University of Virginia*,
    515 U.S. 819 (1995)..................................................................................................9

*Seattle Mideast Awareness Campaign v. King Cty.*,
    781 F.3d 489 (9th Cir. 2015) ....................................................................................4

*Snapp v. United Transportation Union*, 889 F.3d 1088 (9th Cir. 2018).........................6

*United States v. Gilbert*, 920 F.2d 878 (11th Cir. 1991)..............................................5–6

*United States v. Kokinda*, 497 U.S. 720 (1990) ............................................................13

*Verlo v. Martinez*, 820 F.3d 1113 (10th Cir. 2016) .......................................................14

**Statutes**

29 U.S.C. § 151................................................................................................................10

Wash. Rev. Code § 70.94.521..........................................................................................10

P.'s Oppo. and Reply on Mtns. for Summ. J. - iii
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

# INTRODUCTION

Ecology promulgated the challenged speech restriction in response to Freedom Foundation's attempts to inform public employees of their constitutional right to opt out of union dues and has applied that rule to target Freedom Foundation for exclusion while allowing other outside organizations to enter Ecology premises and engage in expression in public areas of the building. Ecology's defense of this behavior contradicts sworn statements by Ecology's own designated representatives and relies on a cramped reading of its own policy and public forum caselaw.

Ecology's lobby is a designated public forum because Ecology has allowed an array of expressive activity to occur there. Ecology's Administrative Policy 14-10 regulates speech in the lobby. Critically, Ecology's designated representative testified that the agency's enforcement of this speech restriction depends on an evaluation of whether the proposed speech coincides with agency interests, so Ecology's policy must survive strict scrutiny as a content-based speech regulation. *See* MSJ Exh. 9 at 21:5–11.

Even if the lobby was deemed a non-public forum, Ecology still cannot survive First Amendment scrutiny because the exclusion of Freedom Foundation is admittedly not viewpoint-neutral. Ecology's representative testified that Freedom Foundation cannot share information about labor relations in the lobby, while the Washington Federation of State Employees—a private organization—is given a monopoly regarding expression on that topic. *Id.* Exh. 27 at 17:17–22. Moreover, the speech restriction used to deny Freedom Foundation access to public areas in the building was created *directly in response* to Freedom Foundation's attempts to share information about labor relations in the lobby, and has been used to silence the Foundation's message while allowing other more favored expression to take place there. These facts give rise to a strong inference of viewpoint discrimination.

Moreover, regardless of forum type, Ecology's speech restriction is unreasonable. Ecology's exception for speech related to Ecology business grants too much discretion to enforcement officers, especially given its broad interpretation, which has included topics only

P.'s Oppo. and Reply on Mtns. for Summ. J. - 1  
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation  
255 South King Street, Suite 800  
Seattle, Washington 98104  
(916) 419-7111

tangentially related to Ecology business—for example, a private company was allowed to conduct a bicycle repair demonstration. This effectively removes any objectivity from Policy 14-10. Moreover, Ecology allows a significant amount of disruptive activity—from plant sales to farmers' markets—to occur in the lobby, yet it claims that a canvasser quietly passing out leaflets causes too much disruption. This inconsistency in the policy's application shows that Ecology's speech policy is effectively arbitrary and therefore unreasonable. Likewise, Ecology unreasonably equates quiet leafletting with intrusive solicitation and noisy protests. Thus, even if this Court finds that Ecology's practices are viewpoint-neutral, Ecology still fails reasonableness review.

## STATEMENT OF FACTS

Freedom Foundation incorporates the statement of facts from its Motion for Summary Judgment, Docket Entry # 27 (MSJ). In addition, Freedom Foundation notes the following: Ecology does not dispute that the union has provided its version of public employees' rights after the Supreme Court's *Janus* decision on Ecology premises. *See* MSJ, Exh. 23. Ecology does not dispute that it does not monitor union expression while union representatives are on Ecology premises. *See* MSJ, Exh. 14, 60:12–21. And Ecology does not dispute the security guard Ken Nasworthy's statement that groups engage in leafletting in the lobby "all the time." MSJ Exh. 7, 2:23–25, 3:1–3.[1]

## ARGUMENT

**I. Ecology's management of its lobby has displayed an intent to create a designated public forum**

Ecology attempts to avoid summary judgment by altering the well-settled criteria for establishing a designated public forum. According to Ecology, a government property only becomes a designated public forum if it opens itself to indiscriminate use by the public. *See* XMSJ at 18–19. Not true. A designated public forum will also be found if the forum is "generally

---

[1] Freedom Foundation agrees with Ecology that the slightly different accounts of what took place when Freedom Foundation visited Ecology in 2015 are not material to the resolution of this dispute. *See* Defendants' Response and Cross-Motion for Summary Judgment, Docket Entry #30 at 14 n.6.

P.'s Oppo. and Reply on Mtns. for Summ. J. - 2  
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation  
255 South King Street, Suite 800  
Seattle, Washington 98104  
(916) 419-7111

available" for "expressive use by the general public *or by a particular class of speakers*." *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677–78 (1998) (emphasis added). Hence, a public forum can exist even where, as here, the government exercises some selectivity but still opens the space to a class of speakers.

Ecology also claims that Freedom Foundation has ignored the key element of what creates a designated public forum—government intent. *See* Defendants' Response and Cross-motion for Summary Judgment, Docket Entry #30 at 18 (XMSJ). Not so. The three factors of policy, policy enforcement, and nature of the forum, which Freedom Foundation discussed at length, are the factors that courts use to assess government intent. *See* MSJ at 10–16. All three factors strongly favor finding a designated public forum.

In its argument regarding the "policy" factor of public forum analysis, Ecology focuses solely on the text of Policy 14-10 and ignores Ecology's own interpretations of the policy, wherein most of the ambiguity lies. Section 2 of Policy 14-10 states: "Visitors also may not use Ecology facilities to promote or solicit for an outside organization or group." MSJ Exh. 8. While the text may appear straightforward, Ecology's interpretations impose substantial ambiguity. For example, Ecology's representative testified that speech expressly promoting an outside organization can be allowed under a variety of case-by-case circumstances despite the straightforward prohibition in Policy 14-10. These circumstances include a variety of amorphous factors like intent, speech content, whether the speech "encourages conversation," and how related the speech is to Ecology "business." *See id.* Exh. 9 at 18:2–5, 19:3–8, 21:9–11, 24:14–19, 26:10–15, 32:19–25, 38:22–39:7. These unwritten exceptions are largely up to enforcement discretion, *see id.* at 38:22–39:7.

The meaning of Policy 14-10 only grows hazier when considering the past enforcement practices of Ecology. As Freedom Foundation pointed out in prior briefing, *see* MSJ at 8, 19, Ecology has allowed a variety of outside organizations to engage in expression in public areas of the building, such as the Washington Federation of State Employees, Intercity Transit, Joy Ride Bikes, the Thurston County Food Bank, and the Master Gardeners Foundation of Thurston County. *See id.* Exhs. 18, 20, 21, 22. Ecology has sought to explain away this apparent lapse in policy

P.'s Oppo. and Reply on Mtns. for Summ. J. - 3
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

enforcement by creating a non-textual exception for speech related to Ecology business. *See id.* Exh. 9 at 38:22–39:7.   Not only is this malleable exception subject to the arbitrary exercise of discretion, but the exception still fails to explain the allowance for the food bank or the gardeners association. Ecology notes that the food bank and the gardeners association were authorized by Ecology to be on the premises as part of the Charitable Fund Drive, but that simply begs the question why these outside organizations (and not others) are exempt from Policy 14-10. Moreover, Ecology has offered no evidence to rebut an Ecology security guard's statement that other outside groups often leaflet in the lobby. *See* MSJ Exh. 7 at 2:23–3:3.

Ecology also attempts to avoid the inference of inconsistent enforcement by referencing Ecology's alleged enforcement of Policy 14-10 against a coffee tasting event proposed by a local coffee company. XMSJ at 11–12. This example, however, actually corroborates the lack of consistent enforcement. The key fact in the coffee company example is that Ecology *still allowed* the company to engage in promotion *on Ecology premises*. *See* Nelson Dec., Exh. 3 at 77:8–19. The agency simply required that such promotion occur in the cafeteria instead of the lobby. *Id*. Such expression would still facially violate Policy 14-10, which does not limit its scope to certain parts of Ecology premises.

As for the nature and purpose of the forum, Ecology argues that, as a general matter, courts have held that government lobbies are not public fora. *See* XMSJ at 29. This broad proposition clashes with the fact-specific nature of the public forum inquiry. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983) ("[The] existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."). The courts look to various context-specific factors like relevant government policies, the past enforcement of those policies, and the nature and purpose of the forum. *Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 497 (9th Cir. 2015). That three-factor test cannot be distilled into a simplistic rule that lobbies are never designated public fora.

P.'s Oppo. and Reply on Mtns. for Summ. J. - 4  
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation  
255 South King Street, Suite 800  
Seattle, Washington 98104  
(916) 419-7111

Indeed, the cases cited by Ecology demonstrate this point. Ecology points, for instance, to *Families Achieving Independence and Respect (FAIR) v. Nebraska Dept. of Social Services*, 111 F.3d 1408 (8th Cir. 1997), an Eighth Circuit decision that provoked a four-justice dissent. *FAIR* did indeed involve a lobby at a state department of social services, but the rule at issue was clearer: only speakers who offered a "direct benefit" to welfare recipients could engage in expression in the lobby. *Id.* at 1415. The department did not have an amorphous exception for speech related to agency or state business, nor did the department weigh content, intent, or other factors like those considered by Ecology.[2] Moreover, here, there is no dispute that Freedom Foundation's message provided a real and direct benefit for public employees.

Ecology also cites to *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133 (2d Cir. 2004), as another "lobby" case. Yet again, the differences are instructive. First, *Make the Road* did not involve a government lobby but rather a job center waiting room. *Id.* at 137. And second, the exception for "official business" was "clearly defined by state and local law." *Id.* at 140. Ecology's exception, on the other hand, lacks any definition at all—it is simply up to the enforcement officer as to whether expression is adequately related to Ecology or state business, and it can include such tangential matters as commuting and wellness. *See* MSJ Exh. 9 at 38:23–39:7; Exh. 27 at 31:10–15. Also, unlike Ecology, the agency at issue in *Make the Road* demonstrated consistent enforcement by regularly patrolling the waiting rooms and asking those who were not conducting official business to leave. *Id.* at 140.

Ecology's third "lobby" case is *United States v. Gilbert*, 920 F.2d 878 (11th Cir. 1991), which involved an unusual 8-year saga of a man camping on federal courthouse grounds and claiming that his homelessness was an act of protected expression. The *Gilbert* court held that the outside portico and the indoor lobby were both non-public fora because the plaintiff had not brought forth any evidence that the government had allowed any speech activity on the premises.

---

[2] The dissent in *FAIR* did, however, note that even "direct benefit" suffers from dangerous ambiguity: "The constitutional infirmity here derives from the policy's imprecision: it confers virtually unrestrained power on authorities to define what constitutes a direct benefit to welfare recipients." *Id.* at 1425 (Heaney, J., dissenting). Ecology here holds even greater "unrestrained power" to decide what speech is adequately tied to Ecology or state business.

P.'s Oppo. and Reply on Mtns. for Summ. J. - 5
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

*See id.* at 885. The contrast here is clear: Ecology has authorized a substantial amount of activity in the lobby, much of it expressive.

## II. Ecology has interpreted its own speech restrictions as content-based

Ecology misunderstands the definition of a content-based law. According to Ecology, a law is only content-based if it targets a specific topic on its face or stems from disagreement with a particular message. *See* XMSJ at 24–25. Not so. If the law makes distinctions based on content, then the law is content-based, regardless of whether one particular topic is favored over another. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015); *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015) ("South Carolina's anti-robocall statute is content based because it makes content distinctions on its face.").

Ecology can only evade the conclusion that the restriction at issue is content-based by focusing solely on the text on its face while ignoring the interpretation offered by Ecology's own designated representative. Jason Norberg, designated by Ecology to testify on Ecology's behalf regarding the meaning and enforcement of Policy 14-10, said that speech content "would be considered" as part of enforcing the policy. Exh. 9 at 20:16–20. When asked about what types of communication would run afoul of the policy, he testified that it "would be dependent upon the content of that conversation." *Id.* at 21:9–11. That is the definition of a content-based law. Ecology cannot now contradict the admission by its designated representative that enforcement of Policy 14-10 involves consideration of content. *See Snapp v. United Transportation Union*, 889 F.3d 1088, 1103–04 (9th Cir. 2018) (an organization "generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative") (quoting 7 James Wm. Moore et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016)).

Ecology's reliance on an extra-textual "related to agency business" exception cannot save its speech policy because the exception also requires that the agency decide who can and cannot speak in the Lobby based on content. Ecology's representative testified that speech deemed by Ecology to be sufficiently related to Ecology "business" would be allowed, even if it otherwise would violate the plain terms of Policy 14-10. *See* MSJ, Exh. 9 at 38:22–39:7, 41:5–7. Ecology's

P.'s Oppo. and Reply on Mtns. for Summ. J. - 6
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

representative explained that this is why Intercity Transit and Joy Ride Bikes could engage in speech on Ecology premises. *See id.* at 35:14–36:11. Ecology's representative likewise testified that this exception is not limited to the commute trip reduction program—as Ecology's brief implies—but rather applies to anything that Ecology decides is related to Ecology's work, including such ambiguous topics as "wellness." *Id.*, Exh. 27 at 30:14–20, 31:10–15. As Ecology's representative testified, determining whether speech satisfies this exception requires reference to the content of the communication. *See* Exh. 9 at 21:9–11. In light of Ecology's own interpretation, Policy 14-10 is content-based.

### III. Freedom Foundation has presented both direct and circumstantial evidence demonstrating viewpoint discrimination

#### a. Statements by Ecology's designated representative show viewpoint discrimination

Ecology wrongly claims that Freedom Foundation offered no direct evidence of viewpoint discrimination and relies exclusively on circumstantial evidence. *See* XMSJ at 31. As direct evidence, Freedom Foundation relied on Ecology's express position that, despite acknowledging that labor issues are central to Ecology business, only the union may speak about labor relations on Ecology premises. *See* MSJ at 17, Exh. 27 at 17:17–22. This is direct evidence that evinces a "governmental intent to intervene in a way that prefers one particular viewpoint in speech over other perspectives on the same topic." *Ridley v. Massachusetts Bay Transp. Authority*, 390 F.3d 65, 82 (1st Cir. 2004); *see id.* at 87 ("[S]tatements by government officials on the reasons for an action can indicate an improper motive.").

Ecology seeks to excuse this preferential treatment by relying on *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983). *See* XMSJ at 31–32. In *Perry*, a school allowed the teachers' union to access school mailboxes but denied such access to a rival union that did not represent the teachers. 460 U.S. at 40.[3] Excluding a rival union from the

---

[3] It is also worth noting that the rival union was still allowed to use other school facilities to reach out to teachers. *Perry*, 460 U.S. at 41. Thus, unlike Ecology's policy, the school did not wholly exclude the rival union from speaking on school premises.

P.'s Oppo. and Reply on Mtns. for Summ. J. - 7
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

mailboxes promoted the school's legitimate interest in maintaining labor peace in the unique context of exclusive representation. *See id.* at 52. *Perry* did not give the union the exclusive right to speak on labor relations in a particular forum. Crucially, the school did *not* prohibit all speech relating to labor relations except for the union's view. *See generally id.* Hence, the more apt comparison is to *City of Madison, Joint School District No. 8 v. Wisconsin Employment Relations Commission*, 429 U.S. 167 (1976), where a government commission only allowed the union to speak on labor relations matters at a public meeting and denied non-union employees any chance to speak. *See id.* at 174–75; *see also Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107–09 (2001) (public school engaged in viewpoint discrimination by excluding religious perspectives from a forum on teaching moral values). Similarly, Ecology has permitted "one side of a debatable public question to have a monopoly in expressing its views to the government [which] is the antithesis of constitutional guarantees." *City of Madison Joint Sch. Dist.*, 429 U.S. at 175–76. *See also McCullen v. Coakley*, 573 U.S. 464, 485 (2014) (a speech regulation is "a clear form of viewpoint discrimination" if it "facilitate[s] speech on only one side" by allowing only one group of speakers to speak on a subject in a forum).

Ecology seeks to distinguish *Madison* by pointing out that the forum was public, *see* XMSJ at 33, but viewpoint neutrality is required in both public and non-public fora. *See Cornelius v. NAACP Legal Defense and Education Fund, Inc.*, 473 U.S. 788, 806 (1985) ("Control over access to a nonpublic forum can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are *viewpoint neutral*.") (emphasis added).

Ecology also points to the Collective Bargaining Agreement, which purportedly allows the union to utilize Ecology facilities. But this allowance simply begs the question. The issue is not whether the union has authority to use Ecology premises for expressive purposes, but rather why such an allowance should be exclusive—let alone determinative of Freedom Foundation's constitutional rights. Once Ecology has invited a private organization onto the premises to engage in speech on a topic, regardless of whether such an invitation is accomplished by formal agreement

P.'s Oppo. and Reply on Mtns. for Summ. J. - 8
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

or some other means, then Ecology has limited its ability to restrict speakers who seek to share their views on the same subject matter. *See Rosenberger v. Rector and Visitors of the University of Virginia*, 515 U.S. 819, 829 (1995) ("Once it has opened a limited forum, however, the State must respect the lawful boundaries it has itself set.").

It is also important to note that the union's speech monopoly on Ecology premises relates to matters of public concern relating to labor relations on Ecology premises. The Supreme Court has held that all union speech regarding representation, whether related to grievances or wages, is a matter of great public concern. *Janus v. AFSCME*, 138 S. Ct. 2448, 2476 (2018). The evidence also indicates that union representatives are not limited solely to representational activities when on Ecology premises. Ecology never rebuts or disputes Freedom Foundation's proffered evidence that the union speaks about politically fraught issues like the Supreme Court's *Janus* decision while on Ecology premises. *See* MSJ Exh. 23. Nor does Ecology dispute the evidence that it does not monitor the union's expression while its representatives are on Ecology premises. MSJ Exh. 14 at 60:12–21.

    **b.**    **The adoption and enforcement of Policy 14-10 demonstrate viewpoint discrimination**

The circumstantial evidence only corroborates the direct evidence establishing Ecology's viewpoint discrimination.[4] Ecology adopted a policy change in direct response to Freedom Foundation and has specifically targeted Freedom Foundation with that policy while allowing other outside speakers to use Ecology premises.

The evidence is undisputed that Ecology passed Section 2 of Policy 14-10 in response to Freedom Foundation's visit to Ecology headquarters in 2015. *See* MSJ Exh. 9 at 7:11-18. In addition, the evidence suggests that Ecology has engaged in uniquely discriminatory enforcement of that policy against Freedom Foundation. Ecology claims that outside organizations such as Intercity Transit, Joy Ride Bikes, or organizations supporting employee "wellness" may engage in

---

[4] Ecology disparages Freedom Foundation's use of circumstantial evidence, XMSJ at 31, but caselaw is clear that such evidence is permissible in demonstrating viewpoint discrimination. *See* MSJ at 18; *Ridley*, 390 F.3d at 87.

P.'s Oppo. and Reply on Mtns. for Summ. J. - 9
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

speech otherwise prohibited by Policy 14-10 because these organizations are engaged in expression related to agency or state business. Ecology's representative testified, however, that labor relations are a matter of state business and are thus permissible topics to discuss on Ecology premises, yet according to Ecology only the union may speak on that topic on Ecology premises. *Compare* MSJ Exh. 27 at 16:11–24 *with id.* at 17:17–22.

Ecology argues, for instance, that the agency's commute trip reduction program is authorized by the state legislature, thus allowing for outside organizations' use of state resources to help employees learn about commuting options. *See* XMSJ 22. But Ecology's citation to legislation only states: "State agencies shall implement programs to reduce single-occupant vehicle commuting at all major worksites through the state." Wash. Rev. Code § 70.94.521. While this certainly gives the agency the imprimatur to encourage its employees to seek alternative commuting options, it does not explain why the agency can grant preferential access to outside organizations that speak on this topic.

In fact, if loose statutory mandates grant implicit approval for outside organizations to have preferential access to educate employees on those topics, then Freedom Foundation should fit within that class of speakers. After all, just as the state legislature has declared a policy of reducing single-commuter vehicles, the United States Congress has established as the policy of the United States to protect "the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C. § 151. If outside organizations can educate employees on Ecology premises about commute reduction, then outside organizations should likewise be able to educate employees on Ecology premises about self-organization and freedom of association.

The allowance for the food bank and the gardeners' foundation are even more tenuous. Ecology may have a charitable fund drive that supports such organizations, but that does not explain how these organizations' speech activities relate to Ecology business more than, say, speech about how union expenditures are being spent. Ecology points out that such organizations

P.'s Oppo. and Reply on Mtns. for Summ. J. - 10
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

went through a preapproval process, but this once again only begs the question because it requires Ecology to review the content of any proposed speech. Freedom Foundation also sought pre-approval for its speech activities, but Ecology denied approval.

Ecology argues that Freedom Foundation is not alone because Ecology turned away the coffee company from using the lobby for coffee sampling.  As mentioned above, however, the coffee company, like other private speakers at Ecology, still received markedly different treatment as compared to Freedom Foundation. Ecology still allowed the coffee company to promote its business on Ecology premises—it just limited the location where the company could do so. Ecology has maintained, by contrast, that Freedom Foundation cannot engage in leafletting in any areas of the Ecology building. The agency subjected the coffee company to a time, place, and manner restriction, but it denied Freedom Foundation access entirely. This is not a viewpoint-neutral enforcement of Policy 14-10.

  c. **Policy 15-01 does not apply to outside organizations on its face, and Ecology's interpretation to the contrary is unreasonable**

In an attempt to avoid the obvious inference of viewpoint discrimination raised by the fact that Section 2 of Policy 14-10 was enacted in response to Freedom Foundation's leafleting—*see* MSJ at 19—Ecology now argues that the prohibition on promotion and solicitation by outside organizations has always been Ecology's policy. *See* XMSJ at 6. In support, Ecology points to Executive Policy 15-01, and interprets it to apply to organizations such as Freedom Foundation. *See id.* Ecology is incorrect. To be sure, some deference is due to an agency's interpretation of its own policy, but only if the policy is ambiguous and the interpretation is reasonable. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415-16 (2019). Ecology's interpretation is neither. And interpretations adopted in the course of litigation merit particular skepticism. *See id.* at 2417 ("[A] court should decline to defer to a merely convenient litigating position or *post hoc* rationalization advanced to defend agency action against attack.") (internal quotation marks omitted).

Executive Policy 15-01 is not ambiguous, and Ecology's interpretation—raised in litigation—is not reasonable. The policy is part of a chapter on "Ethics/Use of State Resources."

P.'s Oppo. and Reply on Mtns. for Summ. J. - 11
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

Nelson Declaration, Exh. 8. The policy states that it applies "to all employees, both represented and non-represented." *Id.* The policy language is overwhelmingly concerned with "personal" use of various state resources by employees. *See generally id.* That includes the section that Ecology now claims applies to Freedom Foundation. Under "Personal Use of State Resources is Strictly Prohibited for Certain Activities," the policy states in subsection 5.B that "[p]rohibited uses include . . . [s]upporting, promoting, or soliciting for an outside organization or group, unless allowed by law and authorized by Ecology's director or designee." *Id.* The phrasing of this language is straightforward: the outside organizations are not the objects of prohibition. Rather, the policy simply forbids employees—who are the only parties governed by Executive Policy 15-01—from supporting, promoting, or soliciting for outside organizations with state resources. *Id.*

There is no ambiguity here—Executive Policy 15-01 does not regulate non-employees. Hence, Ecology's claim that Executive Policy 15-01 prohibited Freedom Foundation from speaking on Ecology premises well before Policy 14-01 was amended appears to be nothing more than "a merely convenient litigation position or *post hoc* rationalization advanced to defend agency action against attack." *Kisor*, 139 S. Ct. at 2417.

Ecology's behavior confirms that, prior to litigation, Ecology took the view that Administrative Policy 14-10 (and not Policy 15-01) was the key policy regarding non-employee speech activity. When Freedom Foundation's outreach director asked Sandi Stewart in 2017 for a written policy that prevented Freedom Foundation from leafletting in public areas of the building, she responded with an email attaching Policy 14-10. *See* MSJ, Exh. 12. Ecology attempts to disguise this inconvenient fact when it says "Ms. Stewart emailed him copies of Policy 14-10 and Policy 15-01." XMSJ at 15. Actually, she only sent Policy 15-01 after the outreach director asked for it because he saw "that the document you sent references 'Policy 15-01.'" MSJ, Exh. 12. Ms. Stewart's conduct is consistent with the notion that Policy 14-10 was the only relevant policy, not Policy 15-01.

Further, Ecology points to no prior use of Policy 15-01 to turn away outside organizations. Nor did Ecology cite to Policy 15-01 in 2015 when Freedom Foundation sent canvassers to

P.'s Oppo. and Reply on Mtns. for Summ. J. - 12
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

Ecology headquarters. The only time that Ecology appears to have ever claimed that Policy 15-01 applies to outside organization is in the course of this litigation.

**IV.     Ecology's interpretation and enforcement of Policy 14-10 are not reasonable**

In assessing reasonableness, the purpose and nature of the forum and the risk that the expression at issue will disrupt that purpose are the key factors to consider. *See Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 685 (1992). And sure enough, Ecology cites fear of disruption as a rationale for excluding Freedom Foundation. Yet Ecology has provided no contemporaneous evidence indicating that it in fact denied Freedom Foundation's request on that basis.

Moreover, the Department allows a variety of other activities to occur in public areas of the building that pose an equal or greater threat of disruption than quiet leafletting. The Ecology lobby plays host to photo contests, plant sales, farmers' markets, art exhibits, and more. The sales and farmers' markets require two-way interactions between buyers and sellers. This is far more likely to be disruptive than quietly handing out a leaflet, but Ecology's concern for disruption does not extend to these activities. Indeed, the plant sale one year was noisy enough to elicit complaint, yet Ecology still holds it. *See* MSJ, Exh. 19. Hence, Ecology's purported concern for disruption by Freedom Foundation's limited expressive activity is unreasonable.

Ecology points out that courts have held that solicitation tends to be especially disruptive. Yet Freedom Foundation is not engaged in solicitation. In *Kokinda*, the Supreme Court said that solicitation was more disruptive than distributing leaflets because solicitors sought to make the listeners stop, engage with the speaker, and make a decision whether to offer support to the solicitor's organization. *See United States v. Kokinda*, 497 U.S. 720, 734 (1990) ("[C]onfrontation by a person asking for money disrupts passage and is more intrusive and intimidating than an encounter with a person giving out information."). Freedom Foundation is not engaged in this form of disruptive speech. Freedom Foundation simply hands out material as people pass by, which, as the Supreme Court stated, is far less likely to cause disruption than petitioning people for money.

P.'s Oppo. and Reply on Mtns. for Summ. J. - 13
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

Ecology also points out that it has historically required protesters to engage in protests outside the Ecology lobby. Again, however, as with solicitation, a protest is a much more disruptive event than Freedom Foundation's proposed leafletting. Protests involve large numbers of people, chanting, speakers, and large signs, among other things. Freedom Foundation, by contrast, proposes to send one or two canvassers to quietly hand out material. *Cf. Verlo v. Martinez*, 820 F.3d 1113, 1136 (10th Cir. 2016) (drawing a distinction between plaintiffs who "wished to engage in quiet conversations" and "noisy protest speech"). These two different activities merit different regulatory responses, and equating them is not reasonable.

Additionally, Ecology's exception for speech related to Ecology business must also be reasonable. *See Make the Road by Walking*, 378 F.3d at 148 ("[T]he definition of official business used must be reasonable."). Ecology's representatives stated that speech related to Ecology or state business could be allowed, including expression about such ambiguous concepts as "wellness." *See* MSJ Exh. 27 at 30:14–20, 31:10–15. This malleable exception, molded at will by Ecology discretion, is similar to the "airport related" exception in *Jews for Jesus* that was so open-ended as to grant "virtually unrestrained power" to enforcers in regulating speech. *Board of Airport Commissioners of City of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 576 (1987). Neither Ecology's designated representatives nor its cross-motion offer any meaningful boundaries, and the exception therefore fails to satisfy reasonableness review.

## V. Ecology has not left open adequate alternative channels

Ecology defends this unreasonable speech restriction by arguing that it has left an adequate alternative channel open because Freedom Foundation can canvass on the street or outside the building. Ecology carries the burden of demonstrating that alternatives are adequate. *See Lim v. City of Long Beach*, 217 F.3d 1050, 1054 (9th Cir. 2000) ("[T]he burden of proving alternative avenues of communication rests on Long Beach."). An adequate alternative channel must still allow the speaker to reach the intended audience as effectively as the prohibited speech. *See City of Ladue v. Gilleo*, 512 U.S. 43, 57 (1994) ("Furthermore, a person who puts up a sign at her residence often intends to reach *neighbors*, an audience that could not be reached nearly as well

P.'s Oppo. and Reply on Mtns. for Summ. J. - 14
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

by other means."); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011) ("[T]he proffered alternatives must allow the speaker to reach his or her intended audience, in an equally effective manner as the prohibited speech, and without incurring meaningfully greater costs in time or money.") (Gould, J., concurring); *Contributor v. City of Brentwood, Tenn.*, 726 F.3d 861, 865 (6th Cir. 2013) ("The key for purposes of the adequate-alternatives analysis is whether the proffered alternatives allow the speaker to reach its intended audience.").

Here, Freedom Foundation's intended audience is state employees. The evidence demonstrates that neither the street nor the plaza outside the lobby entrance are adequate alternatives. The department has not demonstrated that Ecology employees frequently walk along Desmond Drive, such that Freedom Foundation canvassers can hand them information.[5] Moreover, the plaza that Ecology suggests as an alternative is outside the visitor's entrance on the building's north side, but employee parking is on the east side of the building, closer to employee entrances on that side. *See* Nelson Declaration Exs. 1 and 4, XMSJ at 4. Ecology fails to offer any evidence that employees tend to walk through the plaza rather than entering the building from the employee parking area. By contrast, the lobby is a high-traffic area where Freedom Foundation can better reach its intended audience. XMSJ at 29; MSJ, Hayward Declaration ¶ 9.

## CONCLUSION

Ecology's exclusion of Freedom Foundation does not satisfy First Amendment scrutiny. Freedom Foundation respectfully asks the Court to grant its motion for summary judgment and deny Ecology's cross-motion.

---

[5] The fact that Mr. Cates stood out on the street and waved at passersby does not demonstrate that the street is an adequate alternative. *See* XMSJ at 27. The adequacy of a location depends in part on the type of expression conducted there. The street may be an appropriate and adequate location for holding a large poster and waving, but not necessarily for handing out leaflets to passersby. Ecology inaccurately states that Mr. Cates was handing out flyers, but the evidence cited by Ecology only indicates that he was holding a sign. *Compare* XMSJ at 15:15–17 *with* Nelson Decl. Exh. 18 at 15:11–22, Exh. 3 at 38:15–39:9.

P.'s Oppo. and Reply on Mtns. for Summ. J. - 15
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

DATED: October 11, 2019.          Respectfully submitted,

By: s/ BRIAN T. HODGES
By: s/ ETHAN W. BLEVINS
Brian T. Hodges, WSBA # 31976
Ethan W. Blevins, WSBA # 48219
Pacific Legal Foundation
255 S. King Street, Suite 800
Seattle, Washington 98104
Telephone: (916) 419-7111
Fax: (916) 419-7747
Email: BHodges@pacificlegal.org
Email: EBlevins@pacificlegal.org

Attorneys for Plaintiff

P.'s Oppo. and Reply on Mtns. for Summ. J. - 16
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111

# CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2019, I served the foregoing on the following persons by the means indicated:

| | |
|---|---|
| Emily C. Nelson, Assistant AG<br>Attorney General of Washington<br>Ecology Division<br>P.O. Box 40117<br>Olympia, WA 98504-0117<br>Emily.nelson@atg.wa.gov<br>ECYOLYEF@atg.wa.gov | ☒ Email<br>☐ U.S. First Class<br>☐ Legal Messenger<br>☒ E-Service/ECF<br>☐ Other |
| Elizabeth Delay Brown, Assistant AG<br>Attorney General of Washington<br>Ecology Division<br>P.O. Box 40117<br>Olympia, WA 98504-0117<br>Elizabeth.brown@atg.wa.gov | ☒ Email<br>☐ U.S. First Class<br>☐ Legal Messenger<br>☒ E-Service/ECF<br>☐ Other |

s/ ETHAN W. BLEVINS
Ethan W. Blevins, WSBA # 48219

Attorney for Plaintiff

P.'s Oppo. and Reply on Mtns. for Summ. J. - 17
Case No. 3:18-cv-05548-RBL

Pacific Legal Foundation
255 South King Street, Suite 800
Seattle, Washington 98104
(916) 419-7111