The Honorable Ronald B. Leighton

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

8

9  FREEDOM FOUNDATION, a
   Washington State Nonprofit Corporation,

10                                    Plaintiff,

11      v.

12  WASHINGTON DEPARTMENT OF
13  ECOLOGY, a Washington State Agency;
    SANDI STEWART, in her official
14  capacity as Director of Human Resources
    for the Washington Department of
15  Ecology,

16                                    Defendant.

No. 3:18-cv-05548 RBL

WASHINGTON STATE
DEPARTMENT OF ECOLOGY'S
REPLY IN SUPPORT OF ITS
CROSS MOTION FOR
SUMMARY JUDGMENT

**NOTE ON MOTION
CALENDAR:
October 25, 2019
Oral Argument Requested**

17              **I.      INTRODUCTION**

18          The undisputed material facts in this case show that Ecology's lobby is a nonpublic

19  forum, governed by a reasonable policy that is very common amongst property owners:  in

20  order to be present and make use of the lobby, members of the public must have business to

21  conduct in the building. In Ecology's Lacey headquarters, this means (1) having a meeting

22  with an Ecology staff person or one of Ecology's tenants, (2) attending a public hearing or

23  meeting in the building, or (3) attending an approved charitable activity. It is undisputed that

24  Freedom Foundation's proposed activity (canvassing in Ecology's lobby to promote their

25  organization's message) does not meet any of these exceptions to Ecology's general

26  prohibition on visitors using the agency's facilities for nonbusiness related purposes.

WASHINGTON STATE DEPARTMENT
OF ECOLOGY'S REPLY IN SUPPORT
OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT

1

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

1    Freedom Foundation has never alleged, nor produced any evidence showing, that it had a

2    meeting with Ecology staff, a public hearing to attend, or was invited to participate in an

3    Ecology-approved charitable activity, and was denied access because of its message.

4         Instead, Freedom Foundation maintains that the First Amendment requires Ecology to

5    allow the Foundation to use the agency's headquarters lobby for its own purposes because the

6    message Freedom Foundation seeks to promote concerns "labor relations." No court, least of

7    all the U.S. Supreme Court in *Janus v. AFSME*, 138 S. Ct. 2448 (2018), has articulated such a

8    rule. The fact that Ecology's employees have chosen to unionize, and bargain for the ability to

9    meet with their union representatives at their place of work, does not mean that Ecology is now

10   required to allow any organization that wishes to promote a message concerning labor relations

11   to use Ecology's facilities. Indeed, this is precisely the issue that the Supreme Court addressed

12   in *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 52 (1983), in which it

13   held that denying a rival union access to teacher mailboxes "may reasonably be considered a

14   means of insuring labor-peace within the schools."

15        There is no meaningful difference between Freedom Foundation and other outside

16   groups who might wish to canvass Ecology employees and inform them of issues germane to

17   the agency's management of Washington State's natural resources. Neither form of expression

18   is allowed in Ecology's lobby. Freedom Foundation's First Amendment claim fails as a matter

19   of law, and as such, this Court should deny its motion for summary judgment, grant Ecology's,

20   and dismiss this case.

**II.    STATEMENT OF FACTS**

21        Ecology incorporates and relies on the Statement of Facts from its Response and

22   Cross Motion for Summary Judgment. *See* Dkt. 30 at 2–16.

23

24

25

26

WASHINGTON STATE DEPARTMENT                    2              ATTORNEY GENERAL OF WASHINGTON
OF ECOLOGY'S REPLY IN SUPPORT                                              Ecology Division
OF ITS CROSS MOTION FOR                                                    PO Box 40117
SUMMARY JUDGMENT                                                     Olympia, WA 98504-0117
                                                                          360-586-6770

### III.    ARGUMENT

**A.    The Undisputed Evidence Shows That Ecology's Headquarters Lobby Is a Nonpublic Forum**

**1.    Ecology only uses the lobby for internal meetings or events for its employees**

Ecology's use of its own lobby for internal, statutorily authorized events or meetings is not evidence of "purposeful designation for public use." *See Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 680 (1998) (quoting *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 805 (1985)). "[T]he government does not create a designated public forum when it does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission to use it." *Forbes*, 523 U.S. at 679 (internal citations and quotation marks omitted).

This is precisely how Ecology's policies operate. It is undisputed that all of the events and meetings cited by Freedom Foundation were internal events for Ecology staff—not events open to the public. Ecology has reserved access to the lobby for the agency's own use, but visitors can obtain permission to access the lobby if they have a meeting with Ecology staff, are attending a public hearing, or are participating in a charitable activity. *See* Dkt. 30 at 8–11. Ecology relies on the state Legislature, Office of Financial Management, and Executive Ethics Board to determine whether a visitor's presence in, or use of, Ecology facilities is legitimately related to agency business. *See* Dkt. 30 at 22; Nelson Decl. Ex. 17 at 2–3.[1]

Freedom Foundation attempts to imbue this simple concept with ambiguity, but the Supreme Court has had no trouble finding that restricting the use of government property to only those persons who have "legitimate business on the premises" is wholly consistent with the First Amendment. *See United States v. Grace*, 461 U.S. 171, 178 (1983) (citing *Adderley v. State of Fla.*, 385 U.S. 39, 47 (1966). The Foundation admits that Ecology "exercises some selectivity" in determining who may access its lobby and for what purpose, but maintains that

---

[1] This also applies to wellness activities, which the Executive Ethics Board has authorized as a permissible use of state resources under the state's Smart Health program. Blevins Decl. Ex. 27 at 30:20-31:15.

WASHINGTON STATE DEPARTMENT OF ECOLOGY'S REPLY IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT

3

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

1   the lobby is still a designated public forum because Ecology has opened the lobby "to a class

2   of speakers." *See* Dkt. 39 at 3. The Foundation does not identify the "class of speakers" it

3   believes are allowed to use Ecology's lobby for expressive purposes, but regardless, the

4   argument fails because the "selective access" Ecology grants to its lobby "indicates the

5   property is a nonpublic forum." *Forbes*, 523 U.S. at 679. Freedom Foundation has not

6   provided any evidence demonstrating that Ecology has intentionally opened the lobby of its

7   Lacey headquarters building for public discourse.

8           **2.     Ecology interprets and applies its policies consistently**

9           Lacking any evidence that Ecology has designated its lobby as a space for public

10  discourse or expression, Freedom Foundation next argues that Ecology's interpretation of its

11  policies "impose[s] substantial ambiguity." Dkt. 39 at 3. The Foundation also cites to portions

12  of a Rule 30(b)(6)[2] deposition transcript it claims is evidence that "speech expressly promoting

13  an outside organization can be allowed under a variety of case-by-case circumstances despite

14  the straightforward prohibition in Policy 14-10." *Id.* But this argument distorts both the

15  questions that Freedom Foundation's counsel asked, and the answers Ecology gave during the

16  deposition.

17          The deposition testimony that the Foundation relies on does not show that Ecology

18  interprets its policies in a manner that grants permission to use the lobby to all visitors "as a

19  matter of course," such that the lobby could be considered a designated public forum. *See*

20  *Seattle Mideast Awareness Campaign v. King Cty.*, 781 F.3d 489, 497 (9th Cir. 2015). In fact,

21  the testimony is wholly consistent with the plain language of Policy 14-10, which does not

22  allow promotion or solicitation by outside groups, except to the extent it occurs in the context

23  of Ecology-related business.

24

25  _____

26          [2] Ecology's representative answered questions regarding the agency's "interpretation and enforcement,
    since the beginning of 2015, of Administrative Policy 14-10…with respect to visitor activity on the premises of
    the Department of Ecology's Lacey Headquarters…." Nelson Decl. Ex. 7 at 2 (Revised Notice of Rule 30(b)(6)
    Deposition of the Washington Department of Ecology).

WASHINGTON STATE DEPARTMENT            4                  ATTORNEY GENERAL OF WASHINGTON
OF ECOLOGY'S REPLY IN SUPPORT                                          Ecology Division
OF ITS CROSS MOTION FOR                                                PO Box 40117
SUMMARY JUDGMENT                                                 Olympia, WA 98504-0117
                                                                      360-586-6770

1    For example, Ecology's representative explained the following regarding Policy 14-10:

2    (1) he would consult with Ecology's Human Resources Director, Sandi Stewart, to determine

3    whether an activity was permissible (Blevins Decl. Ex. 9 at 18:2–5); (2) he would expect most

4    conversations in Ecology's building to concern Ecology-related business (*Id.* at 19:3–8); (3)

5    one of the reasons Ecology does not allow promotion and solicitation in the lobby is because it

6    can encourage conversations that can be disruptive to staff due to the acoustics of the lobby

7    (*Id.* at 26:10–19); (4) Ecology considers holding a sign to be an active activity, while wearing a

8    pin or t-shirt is more passive (*Id.* at 32:19–25); and (5) Ecology officials have discretion to

9    determine whether allowing Intercity Transit to participate in an internal Ecology event is

10    sufficiently related to Ecology business to be permissible under Policy 14-10 (*Id.* at

11    38:22–39:7).

12    The remaining portions of the deposition cited by Freedom Foundation consist of a

13    series of increasingly attenuated hypothetical questions that are not material to the issue of

14    whether Ecology's lobby is a public forum. At one point, counsel for the Foundation asked

15    what Ecology would do if "a single member of the public who is not representing any other

16    organization entered Ecology premises and was in the lobby talking about an issue unrelated to

17    Ecology business[.]" Blevins Decl. Ex 9 at 21:5–8. Ecology's representative stated, "it would

18    be dependent upon the content of that conversation," because Policy 14-10 would not allow

19    "somebody who wanted to come in and is a single member of the public and promote a

20    business or solicit for a business that they own, operate, or are a part of…." *Id.* at 21:12–19.

21    Freedom Foundation's counsel also asked if it would be a violation of Policy 14-10 if a visitor

22    "sat down in the lobby area [wearing a pin that said Save Our Salmon with a Columbia

23    Riverkeepers logo]…." *Id.* at 24:14–16. Ecology responded:

24       It could be. I think we would have to understand their intent for being in the
         building and being in the lobby . . . If they were there to speak business with

25       Ecology staff and they were wearing the pin, I think that's different than
         somebody who is there and perhaps would want to draw attention to that pin

26       through their presence in the building.

WASHINGTON STATE DEPARTMENT
OF ECOLOGY'S REPLY IN SUPPORT
OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT

5

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

1  Blevins Declaration, Exhibit 9 at 21:5–8. Neither of these examples are evidence of

2  inconsistent policy interpretation or application.

3        Finally, the Foundation's assertion that the lobby is a public forum because Ecology

4  allowed its former cafeteria vendor to conduct a coffee taste test in the cafeteria is both

5  incorrect, and immaterial to its claims regarding the lobby. The cafeteria vendor had a

6  contractual right to use the cafeteria space for the commercial purpose of selling food and

7  beverages to Ecology staff and the public, which is why Sandi Stewart directed the vendor to

8  hold the taste test in that space, rather than in the lobby. *See* Dkt. 30 at 11–12. This is not

9  evidence that Ecology intended to open its lobby as a public forum, and Freedom Foundation

10 has failed, as a matter of law, to show otherwise.[3]

11 **B.    Even If Ecology's Policies Were Content Based, They Are Permissible Because the
       Lobby Is a Nonpublic Forum**

12        Freedom Foundation misrepresents Ecology's argument regarding whether its policies

13 are content based as a matter of law. Ecology's argument in its Cross Motion does not

14 contradict its designated representative's Rule 30(b)(6) deposition testimony regarding Policy

15 14-10. The answers he gave reflect the plain terms of Ecology's policies, which require a

16 visitor to have business to conduct with the agency in order to be present in the building.

17 Blevins Decl. Ex. 9 at 21:5–19, 24:14–25:1. Understanding whether a visitor is present to

18 promote their own business or organization, or to meet with Ecology staff, necessarily requires

19 some basic information from the visitor regarding their intentions, even under Freedom

20 Foundation's unlikely hypothetical scenario in which a visitor walks into Ecology's lobby and

21 begins "talking about an issue unrelated to Ecology business" to no one in particular. *See*

22 Blevins Decl. Ex 9 at 21:5–8.

23

24

25        [3] Freedom Foundation continues to rely on the statements of Ecology's contracted security guard as
evidence of Ecology's policy interpretation and enforcement. *See* Dkt. 39 at 2, 4. It is undisputed that
Mr. Nasworthy is not authorized to speak on behalf of Ecology. Moreover, to the extent Ecology is even required
26 to "rebut" the stray, unsubstantiated remarks of a contracted security guard, it has done so several times. *See* Dkt.
30 at 12, 14–16.

WASHINGTON STATE DEPARTMENT
OF ECOLOGY'S REPLY IN SUPPORT
OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT

6

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

1    In its Cross Motion, Ecology disagreed with Freedom Foundation's expansive reading

2    of *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), and pointed out language in that opinion

3    and other Supreme Court cases that indicate Ecology's policies should be considered content-

4    neutral. *See* Dkt. 30 at 24–25. But even if the Court finds that applying Ecology's policies

5    requires some consideration of content, this consideration is permissible because Ecology's

6    lobby is a nonpublic forum. *See Cornelius*, 473 U.S. at 800; *Perry*, 460 U.S. at 49 ("Implicit in

7    the concept of the nonpublic forum is the right to make distinctions in access on the basis of

8    subject matter and speaker identity."). Thus, Freedom Foundation's contention that Ecology's

9    lobby is a public forum because its policies involve some consideration of content fails.

10   **C.    Ecology's Compliance with the State Collective Bargaining Agreement Is Not Evidence of Viewpoint Discrimination**

11

12   Unable to distinguish themselves from other outside groups who wish to engage in

13   expressive activity on Ecology's property (such as Sierra Club), Freedom Foundation resorts to

14   arguments that the Supreme Court settled years ago in *Perry*.

15   First, the Foundation argues that Sandi Stewart's Rule 30(b)(6) testimony agreeing with

16   counsel's question that "the union is the only organization that can speak to union related

17   issues on Ecology premises under [section 5, subsection B of Executive Policy 15-01]" is

18   evidence of viewpoint discrimination. *See* Dkt. 39 at 7; Blevins Decl. Ex. 27 at 17:17–22. But

19   this statement simply confirms the undisputed fact that the state CBA authorizes the

20   Washington Federation of State Employees (WFSE), and no other group, to use state resources

21   for representational activities[4] without violating state ethics laws. *See* Nelson Decl. Ex. 22 at

22   17–18, Ex. 3 at 51:4–12. The Foundation does not dispute that the Washington State

23

24   _____

     [4] The Foundation cites to a meeting between Ecology employees and WFSE on the day that the Supreme

25   Court issued its opinion in *Janus v. AFSCME* as evidence that "union representatives are not limited solely to representational activities when on Ecology premises." Dkt. 39 at 9. The cited meeting, which did not occur in the lobby, is irrelevant to the question of whether Ecology's lobby is a nonpublic forum. Regardless, discussing the

26   outcome of a precedent-setting Supreme Court case concerning public-sector employees' obligation to pay union dues certainly qualifies as "representational activities."

WASHINGTON STATE DEPARTMENT OF ECOLOGY'S REPLY IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT

7

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

1  Federation of Employees (WFSE) is the exclusive bargaining representative for Ecology's

2  represented employees.

3      Second, the Foundation tries to stretch Ms. Stewart's statement into an admission that

4  Ecology prohibits "all speech relating to labor relations except for the union's view" on its

5  property. *See* Dkt. 39 at 8. However, Ecology's rejected offer of allowing the Foundation to

6  canvass in the plaza in front of the lobby (still on Ecology property, just not in the

7  Foundation's preferred location) directly refutes this allegation. This is precisely the sort of

8  "differential access" that the Supreme Court approved of in *Perry*, 460 U.S. at 50–51. Like the

9  teacher's union in *Perry*, WFSE has the right to meet with bargaining unit employees in

10 Ecology's lobby by virtue of its status as the exclusive bargaining representative for Ecology's

11 represented employees. Freedom Foundation can communicate their views on labor relations in

12 the plaza in front of Ecology's building, or on Desmond Drive, as they did in 2017. This

13 distinction, based on "the *status* of the respective unions rather than their views," is not

14 evidence of viewpoint discrimination. *See Perry*, 460 U.S. at 49.

15     Third, Freedom Foundation claims Ecology's decision to revise Policy 14-10 in the

16 wake of the Foundation's 2015 visit to Ecology headquarters is "direct evidence" of viewpoint

17 discrimination. *See* Dkt. 39 at 9–10. However, the Foundation does not dispute that its

18 Santa-costumed canvasser, Elmer Callahan, entered a nonpublic employee work area during

19 that visit, and had to be escorted back to the lobby by Ecology staff. *See* Dkt. 30 at 13–14.

20 The Foundation also does not dispute that during this visit, Ken Nasworthy mistakenly

21 thought the Foundation canvassers were members of WFSE, or that Foundation staff attorney

22 David Dewhirst argued with Mr. Nasworthy and Sandi Stewart after he was told that

23 canvassing was only allowed outside of Ecology's building. *Id.*

24     Freedom Foundation is correct that after the above events, Ecology recognized a need

25 to review and update its own policies to avoid similarly confusing or confrontational

26 situations in the future. *See* Dkt. 30 at 8. But the Foundation fails to put forth any evidence,

WASHINGTON STATE DEPARTMENT
OF ECOLOGY'S REPLY IN SUPPORT
OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT

8

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

1   other than a re-hashing of its designated public forum arguments, to demonstrate that this

2   policy revision was motivated by discriminatory animus towards Freedom Foundation.

3       The other evidence that the Foundation cites does not support its claim that "Ecology

4   has engaged in uniquely discriminatory enforcement" of its policies against Freedom

5   Foundation. Dkt. 39 at 9. The Foundation argues that the state Commute Trip Reduction

6   program does not allow Ecology to invite Intercity Transit or Joy Ride Bikes to participate in

7   internal informational events for Ecology employees. Dkt. 39 at 9–10. However, state law

8   expressly contradicts this claim. *See* Wash. Rev. Code § 70.94.531(3)(b) ("A commute trip

9   reduction program of a major employer shall consist of, at minimum…regular distribution of

10  information to employees regarding alternatives to single-occupant vehicle commuting[.]").

11  Collaborating with a regional transit authority and local bike shop to inform its employees

12  about commuting alternatives is not evidence that Ecology has discriminated against Freedom

13  Foundation.[5]

14      Finally, Freedom Foundation seeks to expand *Janus*, arguing that the decision requires

15  government employers to open their property to groups like the Foundation, simply by virtue

16  of the fact that their employees have chosen to unionize. *See* Dkt. 9. *Janus* is plainly

17  inapplicable here. That case held that public-sector agency-shop arrangements, in which

18  public-sector unions charge nonmembers a proportionate share of union dues for the union's

19  work as the collective bargaining representative, are unconstitutional under the First

20  Amendment. *See Janus*, 138 S. Ct. at 2477-78.

21      No part of *Janus* stands for the proposition that the mere presence of a union in a

22  government building requires an employer to turn their property into a public forum. Ecology

23  certainly has no obligation to allow the Sierra Club use its lobby for expressive activity simply

24

25      [5] The Foundation also cites to the enabling provision of the National Labor Relations Act (NLRA), 29 U.S.C. § 151, as evidence that "outside organizations should likewise be able to educate employees on Ecology

26  premises about self-organization and freedom of association." *See* Dkt. 39 at 10. Notwithstanding Freedom Foundation's apparent expansion of its First Amendment claim to include "Ecology premises" rather than just Ecology's headquarters lobby, the NLRA does not apply to state agency employers. 29 U.S.C. § 152(2).

WASHINGTON STATE DEPARTMENT
OF ECOLOGY'S REPLY IN SUPPORT
OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT

9

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

1  because Ecology's thematic focus is environmental issues. It defies logic, and Supreme Court

2  precedent, to argue that Freedom Foundation is entitled to such preferential treatment. The

3  Court should find that Freedom Foundation has failed as a matter of law to establish that

4  Ecology has engaged in viewpoint discrimination.

5  **D.    State Law Prohibits the Private Use of State Resources by Anyone, Regardless of Whether They Are an Ecology Employee**

6  Freedom Foundation's arguments about Ecology's Executive Policy 15-01 lend no

7  support to their claims of viewpoint discrimination. Ecology does not dispute that Policy 15-01

8  only applies to Ecology employees. Nelson Decl. Ex. 12 at 7:22–24. Ecology employees are

9  prohibited from using state resources to support, promote, or solicit "for an outside

10  organization or group, unless allowed by law and authorized by Ecology's director or

11  designee." Nelson Decl. Ex. 8 at 2. Sandi Stewart explained that the prohibition in Policy

12  15-01 prevents employees, like herself, from allowing non-employees to use state resources.

13  Declaration of Emily C. Nelson in Support of Ecology's Reply Ex. 29 at 49:24–50:10. While

14  the non-employee would not technically be in violation of the Policy, Ms. Stewart would. *Id.*

15  Regardless of who violates the policy, the result is the same: an outside organization is not

16  allowed to make private use of Ecology's facilities.

17  It is reasonable for Ecology to interpret Policy 15-01 in a manner that ensures no one,

18  whether or not they are an employee, misuses the state resources under the agency's control.

19  Freedom Foundation claims that this is post hoc rationalization, but it does not dispute that this

20  policy has been in place since the 1990s, and has been incorporated by reference into Policy

21  14-10 for at least that long. *See* Dkt. 30 at 5–6, 8. Again, the Foundation fails to identify any

22  evidence of viewpoint discrimination.

23  **E.    The Plaza in Front of Ecology's Building and Desmond Drive Are Adequate Channels for Freedom Foundation to Communicate Its Message**

24  Finally, Freedom Foundation contends that in order for the plaza in front of Ecology's

25  building and Desmond Drive to be adequate alternatives to the lobby, Ecology must show that

26

WASHINGTON STATE DEPARTMENT
OF ECOLOGY'S REPLY IN SUPPORT
OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT

10

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

employees "frequently" walk through the plaza or along Desmond Drive. *See* Dkt. 39 at 15. Even though the Foundation does not dispute that one of its 2017 canvassers stood on Desmond Drive dressed as Santa, holding a poster and greeting employees as they arrived, it now claims that Desmond Drive is not adequate for handing out fliers, and therefore is inadequate as a matter of law. *Id.* As with their other arguments, Freedom Foundation's contentions fail.

Freedom Foundation's canvassing methods do not dictate the time, place, or manner restrictions Ecology can establish for its lobby. *See Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). Moreover, Ecology is not required to provide an alternative channel of communication on its own property. *See Greer v. Spock*, 424 U.S. 828, 839 (1976) (political candidates not permitted to campaign on military base; allowing service members to attend political rallies off-base was an adequate alternative); *Pell v. Procunier*, 417 U.S. 817, 827 (1974) (prisoners limited to in-person visits with family, lawyer, or clergy; allowing communication with members of the media by mail was an adequate alternative). It is undisputed that in addition to canvassing on Desmond Drive or in front of Ecology's building, the Foundation also sends canvassers to speak with state employees in their homes. Hayward Declaration ¶ 9. These alternative channels of communication exceed what the Supreme Court has held to be acceptable, and are adequate as a matter of law.

## IV.    CONCLUSION

The undisputed evidence shows that Ecology's lobby is a nonpublic forum, and the agency's regulation of that forum is reasonable. The Court should deny Freedom Foundation's motion for summary judgment, grant summary judgment to Ecology, and dismiss this case with prejudice.

WASHINGTON STATE DEPARTMENT
OF ECOLOGY'S REPLY IN SUPPORT
OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT

11

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

1    DATED this 21st day of October 2019.

2

3                            ROBERT W. FERGUSON
Attorney General

4

5                            */ Emily C. Nelson*
EMILY C. NELSON, WSBA #48440

6                            ELIZABETH DELAY BROWN, WSBA #21521
Assistant Attorneys General

7                            Attorneys for Defendant
Office of the Attorney General

8                            Ecology Division
P.O. Box 40117

9                            Olympia, WA 98504-0117
Telephone: 360-586-6770

10                           Email: ECYOLYEF@atg.wa.gov

11                                  Emily.Nelson@atg.wa.gov
Elizabeth.Brown@atg.wa.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

WASHINGTON STATE DEPARTMENT
OF ECOLOGY'S REPLY IN SUPPORT
OF ITS CROSS MOTION FOR
SUMMARY JUDGMENT            12            ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

1

**CERTIFICATE OF SERVICE**

2           I hereby certify that on October 21, 2019, I caused to be electronically filed the foregoing

3   document with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to the following:

5

6           ***Counsel for Plaintiff***:
            Ethan W. Blevins

7           Pacific Legal Foundation
            255 South King Street, Suite 800
            Seattle, Washington 98104

8           EBlevins@pacificlegal.org

9

10                                          ROBERT W. FERGUSON
                                            Attorney General

11                                          *s/ Emily C. Nelson*

12                                          EMILY C. NELSON, WSBA #48440
                                            Assistant Attorney General

13                                          Attorneys for Defendants
                                            Office of the Attorney General

14                                          Ecology Division
                                            P.O. Box 40117

15                                          Olympia, WA  98504-0117
                                            Telephone: 360-586-4607

16                                          Email: emily.nelson@atg.wa.gov
                                                    ecyolyef@atg.wa.gov

17                                          Elizabeth.Brown@atg.wa.gov

18

19

20

21

22

23

24

25

26